The **UNITED STATES NATIONAL BANK OF GALVESTON,** Libellant,

v.

**MARYLAND NATIONAL INSURANCE COMPANY,** Respondent.

A. D. No. 344.

United States District Court
S. D. Texas,
Corpus Christi Division.
June 12, 1963.

Keys, Russell, Keys & Watson, Corpus Christi, Tex. (M. W. Meredith, Jr., Corpus Christi, Tex.), for libellant.

Kleberg, Mobley, Lockett & Weil, Corpus Christi, Tex. (R. W. Woolsey, Corpus Christi, Tex.), for respondent.

GARZA, District Judge.

This is a suit by the mortgagee of the trawler RUBY E, The United States National Bank of Galveston, as Libellant, against the hull underwriter, Maryland National Insurance Company, Respondent.

The following facts have been admitted by the parties:

(1) On April 11, 1961, Respondent issued its Policy No. HM5179 on the American Institute Time (Hulls) form December 1, 1959, edition (deleting portion of Lines 40 through 43, inclusive; Lines 107 through 110, inclusive; Lines 112 through 121, inclusive; Lines 139 through 142, inclusive, and Lines 150 through 164, inclusive), insuring the trawler RUBY E for a period of one year in the amount of $25,000.00. The assured named in the policy was Ira Pete, owner of the vessel.

(2) The loss payable clause called for losses to be paid to the Assured and the Libellant herein, as their interest might appear.

(3) The policy, as issued, did not contain the Inchmaree Clause except for

the explosion coverage not applicable in this case.

(4) Prior to the time the policy was issued, Libellant, The United States National Bank of Galveston, had made a loan to the assured, Ira Pete, secured by a mortgage upon the Wooden Diesel Shrimper RUBY E.

(5) It is admitted that on July 7, 1961, the RUBY E sank and became a total loss in the waters of the Gulf of Mexico adjacent to the Texas coast, and that at the time of said loss, the principal balance due on the mortgage held by Libellant was $9,400.00.

(6) The vessel, at the time of her loss, was being operated by the Owner-Assured, Ira Pete, as master, and his two sons as crew members.

The Court heard evidence in this case on April 18, 1963, and at the conclusion of said hearing proctors were given an opportunity to submit briefs for consideration by the Court.

The evidence adduced shows that the RUBY E was shrimping in Gulf waters and was towing her nets, dragging for shrimp. One of the nets became fouled on some object on the bottom of the sea. The other net was brought aboard and fastened, and efforts were made to free the one that was "fouled-up".

The Owner-Assured and Master of the RUBY E, Ira Pete, together with his crew members, tried to free the hung net by towing from the outrigger, without success. The master, being fearful of damaging the vessel's rigging, then tied the ends of the "fouled-up" net to an eye-bolt or clete on the inside of the center of the transom of the vessel, which had been used by the master before for such operation and believed by him to be a safe point for the job at hand. The RUBY E was then put in gear ahead and the throttle advanced to between one-fourth and one-half speed. The net apparently came free and the boat started moving forward, but immediately thereafter there was a sudden jerk and loud noise as some portion of the underwater equipment struck another submerged object. Since the strain of the pull was being taken by the vessel's transom, the vessel's transom was pulled out in one piece after the jerk, allowing water to come into the RUBY E, and it sank.

The Libellant claims that the loss of the RUBY E was by a peril of the sea, or a like peril, and that the Respondent is liable on its insurance contract regardless of whether Ira Pete was negligent or not. Libellant also claims that the Respondent is estopped to deny that the policy coverage included the Inchmaree Clause, and that Respondent is liable under that provision even if the master's negligence caused the loss.

The Respondent, on the other hand, alleges that the loss of the RUBY E was not covered under the Perils of the Sea Clause in the policy; that the Inchmaree Clause was not included in the policy and should not be included by estoppel; and even if it should be included, Ira Pete, who was owner, master and assured, being negligent, the Inchmaree Clause would be of no avail to the Libellant here, since the Loss Payee and Libellant stands in the same shoes as the Assured, Ira Pete.

We will next turn to the question of whether the loss of the RUBY E was one covered by the Perils of the Sea Clause in the marine policy in effect.

The clause included in the marine policy reads as follows:

"Touching the Adventures and Perils which we, the said Underwriters, are contented to bear and take upon us, they are of the Seas, Men-of-War, Fire, Lightning, Earthquake, Enemies, Pirates, Rovers, Assailing Thieves, Jettisons, Letters of Mart and Counter-Mart, Surprisals, Takings at Sea, Arrests, Restraints and Detainments of all Kings, Princes and Peoples, of what nation, condition or quality soever, Barratry of the Master and Mariners and of all other like Perils, Losses and Misfortunes that have or shall come to the Hurt, Detriment or Damage of the said Vessel, &c., or any part

thereof; excepting, however, such of the foregoing Perils as may be excluded by provisions elsewhere in the Policy or by endorsement. And in case of any Loss or Misfortune, it shall be lawful and necessary for the Assured, their Factors, Servants and Assigns, to sue, labor and travel for, in and about the Defense, Safeguard and Recovery of the said Vessel, &c., or any part thereof, without prejudice to this Insurance, to the Charges whereof the Underwriters will contribute their proportion as provided below. And it is expressly declared and agreed that no acts of the Underwriters or Assured in recovering, saving or preserving the property insured shall be considered as a waiver or acceptance of abandonment."

Cases deciding what constitutes a peril of the sea are legend.

■ As good a statement of the law as may be found anywhere is to be found in 45 C.J.S. Insurance § 854, which reads as follows:

"§ 854. Perils of the Sea

"Perils of the sea embrace all kinds of marine casualties which are of the sea as distinguished from merely being on the sea, and which are of a fortuitous nature and not the inevitable result of the action of the elements on the fabric of the vessel or its cargo.

"Perils of the sea embrace all kinds of marine casualties, such as shipwreck, foundering, stranding, collision, and every specie of damage done to the ship or goods at sea by the violent action of the winds or waves. They do not embrace all losses happening on the sea, or a peril whose only connection with the sea is that it arises aboard ship, or all damage of which the sea is the cause, but only those perils which are of the sea.

"The coverage is against casualties which may occur, not conse-

quences which must occur; the peril must result from the violent action of the elements, as distinguished from their natural, silent influence on the fabric of the vessel; loss or damage resulting from the ordinary and inevitable action of the winds and waves, such as natural decay and wear and tear, is excluded. Moreover, it is not necessary that there should be the action of the sea, wind, or waves, violent or otherwise, to cause a peril of the sea, but an accidental occurrence, peculiar to the sea, not happening through design, is sufficient.

"The rule has been laid down that a policy insuring against 'perils of the sea' covers only extraordinary risks or occurrences, but other cases hold that it is not limited to extraordinary perils, and covers all instances of marine casualties due to the fortuitous action of the seas. In any event the peril need not be extraordinary in the sense of being catastrophic or arising from causes which are uncommon and could not be reasonably anticipated. Furthermore, whether or not an occurrence constitutes an extraordinary risk so as to be a peril of the sea is not of itself an absolute and unvarying thing, but is dependent on the circumstances of the case and the character of the vessel insured. In considering what is and what is not a peril of the sea, the question is whether the loss arose from injury from without or from weakness within. To make insurer liable the injury must have been occasioned by a storm or accident that would injure a seaworthy vessel."

■ The question before us, then, is whether the sinking of the RUBY E was a peril of the sea as distinguished from merely being on the sea.

This Court finds from the evidence adduced that the RUBY E was a seaworthy vessel when it put out on its ill-

250

fated shrimping voyage, and that it was actually worth more than the amount of insurance in force; that it is not uncommon for shrimping nets to get fouled-up with submerged objects on the bottom of the ocean; that because of the value of the nets, masters of shrimping vessels always attempt to free the nets that have gotten "hung-up"; that on the majority of occasions, attempts to free the nets are successful, and when not successful, the lines break and the fouled-up net is abandoned. These are facts that are generally known throughout the shrimping industry and by the underwriters.

The "fouling-up" or "hanging-up" of shrimp nets on shrimp boats being usual, expected and customary risks of a voyage, in itself does not constitute a peril of the sea. However, it is understood by all, that masters, generally, will try to save their nets. It is unusual and extraordinary for a transom or stern board, such as the one on the RUBY E, to be torn completely off while attempting to free the nets; and this certainly is a peril of the sea. The tearing off of the transom from the RUBY E was an accidental occurrence, peculiar to the sea and not happening through design. Whether the loss resulted from a necessary incident of the venture, that is, from ordinary wear and tear, or from an accident which could not be foreseen, depends of course on the nature of the vessel and the operation involved. Compania de Navegacion, Interior, S.A. v. Fireman's Fund Ins. Co., 277 U.S. 66, at p. 80, 48 S.Ct. 459, at p. 463, 72 L.Ed. 787; Klein v. Globe & Rutgers Fire Ins. Co., 3 Cir., 2 F.2d 137; Allen N. Spooner & Son, Inc. v. Connecticut Fire Ins. Co., 2 Cir., 314 F.2d 753.

The Respondent maintains that Ira Pete, Owner-Master-Assured, was negligent in trying to free the "fouled-up" net by pulling from the clete or eyebolt on the transom. Negligence of the assured or his agent is no defense to the Perils of the Sea Clause in a marine policy.

This Court finds, therefore, that the loss of the RUBY E was a loss covered by the Perils of the Sea Clause in the policy in effect, and that the Libellant is entitled to recover the sum of $9,400.00 with interest at the rate of six per cent per annum from and after April 7, 1961, from the Respondent.

Having found that the loss of the RUBY E was one covered by the Perils of the Sea Clause of the policy in effect, it is not necessary to a decision of this case to pass on the other matters presented. However, the Court will now discuss the same.

Ira Pete, the owner of the RUBY E, had had his boat insured with Springfield Fire and Marine Insurance Company. The Libellant was named as the Loss Payee in that policy which included an Inchmaree Clause. The Bank and its attorneys had considered the coverage of such policy adequate.

John Artman, an insurance agent, carried on conversations with Ira Pete to attempt to get his insurance business, and he did get it on the premise that his premiums would be greatly reduced. It was the understanding of Pete that this reduction in premiums would be due to increasing the deductible provision of the policy from $1,000.00 to $2,500.00, but that in all other respects the policy would be as the one he had.

The files of Agent Artman in connection with the issuance of the policy to Pete by the Respondent have been presented as exhibits. The correspondence between Artman and other agents for the Respondent commenced with a letter written by Artman on April 8, 1961, requesting confirmation of the coverage effective April 11, 1961, for the specific purpose of informing the mortgage holder, The United States National Bank of Galveston. The application enclosed showed a deductible of $2,500.00, but no other notations were made as to hull coverage.

On April 10, 1961, at 9:48 a. m., Respondent's insurance managers replied

to that letter by telegram which read as follows:

"RE YOUR LETTER APRIL 8th CONFIRM BINDING VESSEL 'RUBY E' STOP PRESUME ALL GULF NAVIGATION AND FULL INCHMAREE"

Artman replied to said telegram on the same day, as follows:

"RE VESSEL RUBY E ALL GULF NAVIGATION NOT REQUIRED. US GULF COAST ONLY. THANKS"

Artman then wired the Libellant, confirming coverage on the boat RUBY E with $25,000.00 hull insurance with $2,500.00 deductible, naming the bank as the loss payee, and stating that the original policies would be forwarded immediately upon receipt. The policies were never forwarded to the bank and had not been received by the bank at the time of the sinking of the RUBY E, but, as testified by Artman, it was due to a mixup in his office.

From all the evidence before the Court, it is concluded that the Inchmaree Clause was to be included in the policy to be issued Pete, and the Respondent is estopped from denying its inclusion.

This Court further finds, however, that Ira Pete, as owner, assured and master, was not negligent in any respect. Many witnesses testified as to the procedures used in freeing nets that are "hung-up", and there was a dispute as to whether it should have been pulled from the mast, or from the eye-bolt or clete on the stern. Captain Oscar Galjour, a master of shrimping vessels for many years and the owner of a fleet, testified that he would not have tried to free the net by pulling from the eye-bolt on the transom, but that he knew that his captains did so frequently.

Captain Wesley A. Walls, a marine surveyor, testified that the clete or eye-bolt on the stern was the weakest part of the RUBY E to try to pull the net free.

The fact still remains that Ira Pete was acting as an ordinarily prudent master would have acted under the same or similar circumstances, and I do not find him negligent in any respect in connection with his attempt to free his "hung-up" net by pulling from the clete or eye-bolt on the transom or stern board.

It, therefore, follows that the Inchmaree Clause, as far as coming into effect due to the negligence of the master, does not come into play in this case.

This Memorandum Opinion will constitute the Findings of Fact and Conclusions of Law of this Court.

The Clerk will make available to Proctors copies of this Memorandum Opinion, and Proctor for Libellant will prepare final decree for entry.